IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BANK OF AMERICA, NATIONAL ASSOCIATION, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. **3:10-CV-1932-L** |
| QUIK-WAY FOODS OF DALLAS, INC., et al., | § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiffs' Application for Appointment of Receiver, filed January 18, 2011. After reviewing the application, response, record, and applicable law, the court **grants** Plaintiffs' Application for Appointment of Receiver.

**I.     Factual and Procedural History**

On September 27, 2010, Plaintiff Bank of America, National Association, Successor by Merger to LaSalle Bank National Association (f/k/a La Salle National Bank), as Loan Pool Trustee for EMAC Owner Trust 1999-1; and Plaintiff Bank of America, National Association, Successor by Merger to LaSalle Bank National Association (f/k/a La Salle National Bank), as Loan Pool Trustee for EMAC Owner Trust 2000-1 (collectively, "Plaintiffs") filed their Verified Complaint against Defendants Quik-Way Foods of Dallas, Inc. ("Quik-Way"), Quikport, Ltd., ARG Partners, Ltd. (f/k/a GF Partners, Ltd.), General Quik, Inc., Donald J. Golman, Richard T. Golman, and Alan L. Golman (collectively, "Defendants"). The Verified Complaint is verified by James C. Rickard, vice-president of Berkadia Commercial Mortgage LLC ("Berkadia), the servicer for both trusts.

Plaintiffs assert various claims for breach of contract and seek attorney's fees and injunctive relief.

Defendants Quik-Way, ARG Partners, Ltd., General Quik, and Quikport, Ltd. (collectively, the "Quik Entities") are parents, subsidiaries, and/or affiliates of each other, and all subject to the same control. Defendants Donald L. Golman, Richard T. Golman, and Alan L. Golman (collectively, the "Golmans") are individuals, each of whom has some ownership interest in and control over the Quik Entities. The Quik Entities are engaged in the business and operation of convenience stores selling gas, food, and other items. Certain stores also sell liquor, tobacco, and lottery tickets.

Plaintiffs contend that Defendants have defaulted on two related loan agreements. For the purposes of Plaintiffs' Application for Appointment of Receivership, the court will focus solely on the loan at issue, known as the Quik-Way Loan. On July 14, 1999, Quik-Way entered into an agreement with Enterprise Mortgage Acceptance Company, LLC ("Enterprise") for a loan in the original principal amount of $3,819,000 (the "Quik-Way Loan"). The Quik-Way Loan was evidenced by, in addition to other documents, a Deed of Trust and Assignment of Rents and Fixture Filing, by and between Quik-Way and the Original Lender, granting the Original Lender and its successors and assigns a power of sale, right of entry, title, and interest in the Quik-Way Loan Properties.[1] The Quik-Way Loan was also evidenced by a Guaranty, by and between the Golmans. After the execution of the Quik-Way Loan documents, Enterprise assigned all of its interest in the Quik-Way Loan to EMAC-2, LLC. On March 26, 1999, EMAC-2 assigned all of its interest in the Quik-Way Loan to LaSalle National Bank, as Loan Pool Trustee in trust for EMAC 1999-1 loan pool certificate holders. The servicing of the loan was assigned to Capmark Finance, Inc. On

---

[1] The Quik-Way loan properties consist of 12 convenience stores.

**Memorandum Opinion and Order- Page 2**

October 1, 2007, LaSalle National Bank merged with Bank of America, N.A. ("Bank of America"), which assumed the duties as trustee under the loan. On December 11, 2009, Berkadia, having acquired the North American loan origination and servicing operations of Capmark Financial Group, Inc., including the rights of Capmark as servicer under the loan pooling and servicing agreement, took over the duties as servicer of the Quik-Way Loan. Plaintiffs contend that on January 1, 2010, Quik-Way defaulted on the loan by failing to tender installment payments as required by the loan agreement. Further, Plaintiffs allege that the Golmans defaulted under the terms of the accompanying Guaranty by failing to make the required installment payments on behalf of themselves and Quik-Way. The court delayed ruling on the application until June 17, 2011, to allow the parties an opportunity to resolve the matter.

On January 18, 2011, Plaintiffs filed their Application for Appointment of Receiver. Plaintiffs contend that a receiver is needed to ensure that rents from the Quik-Way properties are collected and properly applied, and to make impartial financial determinations regarding the viability of the properties under Defendants' management. Plaintiffs also seek to recover attorney's fees and costs incurred in filing their Application. Defendants disagree, contending that there is not a necessity for, or the existence of any circumstance legally justifying the appointment of a receiver. The court held oral argument on Plaintiffs' Application on April 12, 2011. The court delayed ruling on the application until June 17, 2011, to allow the parties an opportunity to resolve the matter.

## II. Legal Standard- Appointment of Receiver

Federal courts "ha[ve] the power to appoint a receiver to take possession of [a debtor's] property for preservation under Federal Rule of Civil Procedure 66." *Santibanez v. Wier McMahon & Co.,* 105 F.3d 234, 241 (5th Cir. 1997). Further, "[t]he appointment [of a receiver] is in the sound

discretion of the court." *Id.* (citations omitted). Likewise, "the form and quantum of evidence required on a motion requesting the appointment of a receiver is a matter of judicial discretion." *Id.* (citations omitted). In deciding whether to appoint a receiver, courts consider the following factors:

> a valid claim by the party seeking the appointment; the probability that fraudulent conduct has occurred or will occur to frustrate that claim; imminent danger that property will be concealed, lost, or diminished in value; inadequacy of legal remedies; lack of a less drastic equitable remedy; and likelihood that appointing the receiver will do more good than harm.

*Id.* (citation omitted). Further, "where the appointment of a receiver is sought at the commencement [of the suit] . . . [t]he decision will be made on the basis of the moving papers and such answers, affidavits in opposition, or counter-affidavits as may be offered, and also on the testimony of witnesses in open court if the court deems such a hearing advisable." *Id.* (citation omitted).

### III. Discussion

The court now considers the six *Santibanez* factors to determine whether the appointment of a receiver is warranted in this action.

#### A. Valid Claim By the Party Seeking Appointment

The first factor weighs in favor of appointing a receiver. Plaintiffs contend that Defendant is in default on the Quik-Way loan agreement. Pls.' App. at 5. In support of their contentions, Plaintiffs presented live testimony from David Hodge ("Hodge"), a Waterstone Capital employee.[2] Hodge testified that as a result of the alleged default, Plaintiffs now hold legal title to all rents, income, and profits of the properties secured by the Deeds of Trust. For the purposes of Plaintiffs' Application, Defendants do not dispute the alleged defaults and, further, do not dispute Plaintiffs'

---

[2]For clarification purposes, as it relates to the servicing of the Quik-Way Loan, Berkadia is the "master servicer" and Waterstone Capital is the "special servicer" of the loan. Hodge testified that Waterstone is acting as the day-to-day servicer of the loan.

**Memorandum Opinion and Order- Page 4**

claims to the properties secured by the Deeds of Trust. Accordingly, the court determines that as a result of the undisputed defaults, Plaintiffs have stated a valid breach of contract claim against Defendants.

### B. Probability of Fraudulent Conduct

The second factor weighs in favor of appointing a receiver. Plaintiffs contend that Defendants have committed fraudulent conduct by siphoning off revenues for personal gain that should have been directed towards paying their debts under the Quik-Way Loan. Specifically, Plaintiffs contend that Defendants' fraudulent conduct is evidenced by their willful failure to make full financial disclosures. At the hearing, Plaintiffs presented evidence that the terms of the loan agreements require Defendants to submit financial disclosures. Plaintiffs contend that despite several requests, Defendants failed to make full financial disclosures. Plaintiffs contend that Defendants' failure to submit the disclosures is an attempt to "hide" revenue from them and frustrate their claim for breach of contract. Plaintiffs allege that if the properties are profitable, the revenues, less operating expenses, should be promptly remitted to Plaintiffs. Defendants respond that they are not committing fraudulent conduct to frustrate Plaintiff's claim. Defendants contend that they have promptly furnished the requested financial information. Further, Defendants allege that Plaintiffs have not sought to meet with Defendants and review their records pertaining to the revenues and expenses incurred in operating the properties. Defendants also respond that there is no evidence that they have engaged in conduct tantamount to siphoning off revenue.

After reviewing the parties' contentions, record, and the applicable law, the court finds that evidence exists to indicate that fraudulent conduct is occurring and, alternatively, a strong potential for fraud is present in light of the evidence set forth in the Application and that presented at the

hearing. The court agrees with Plaintiffs that Defendants should readily supply their financial statements as required by the Deeds of Trust. At the hearing, Plaintiffs introduced letters sent to the Golmans, requesting financial disclosures from Defendants. Hodge testified that the requests for financial disclosures were not fully granted. The court concludes that Defendants failure to provide financial statements is indicative that fraudulent conduct may likely be occurring and, as such, may frustrate Plaintiffs' claims. In any event, there is concealment of documents that Defendants are required to disclose, and the court makes reasonable inferences from this failure.

Moreover, the court is unpersuaded by Defendants' argument that Plaintiffs have not sought to meet with Defendants and review their records pertaining to the income received. The terms of the Deeds of Trust do not require Plaintiffs to meet with Defendants to receive the information. Further, Defendants have an affirmative duty to provide the information when requested. In our "digital age," it is a common business practice to e-mail and fax financial information. The court does not understand why Defendants refused to comply with Plaintiffs' requests. From the record, the only reason the court can glean is that Defendants appear to have "something to hide," and that "something" is likely unreported revenue from the operation of the properties. Thus, it is likely that Defendant's nondisclosure of financial records will frustrate Plaintiffs' claim for relief. Accordingly, the court determines that Plaintiffs have proved that fraudulent conduct is likely occurring or will occur to frustrate their claim for relief.

**C.  Imminent Danger that Property Will be Concealed, Lost, or Diminished in Value**

The court determines that this factor weighs against the appointment of a receiver. Plaintiffs contend that there is an imminent danger that Plaintiffs' interest in the properties will lose value by virtue of Defendants' failure to maintain the properties. At the hearing, Hodge testified that he

visited all 12 properties and had concerns regarding the condition of some of the properties. Specifically, he was concerned that: (1) some of the outside features of the properties appeared dated; (2) a fuel port was exposed at one of the gas stations; (3) the properties were less maintained than competitor properties; (4) some of the gas station canopies were faded; and (5) plastic tarps covered areas where the signage of former gas dealers were once displayed. Plaintiffs contend that a receiver should be appointed to avoid further deterioration of the property. Defendants respond that the property is maintained and that there is not an imminent danger that the property will be diminished in value.

Based on Hodge's testimony and the state of the record, there is not an imminent danger that the property will be diminished in value. The court determines that Plaintiffs presented inadequate evidence of the properties' diminishing value. At the hearing, Hodge made conclusory assertions as to the properties value. He did not specify which specific properties were in danger of losing value. He made conclusory assertions that "some" of the properties had dated features. Hodge did not specify which properties were "dated" or provide visual exhibits to the court to demonstrate his concern. He further testified that one of the properties had an exposed fuel port, yet he did not specify which property. Additionally, Plaintiffs did not present any evidence relating to an actual decrease in financial value as a result of Defendants' alleged failure to maintain the properties. In short, Plaintiffs' evidence of diminishing value is conclusory and unpersuasive. Under the state of the record, the court cannot determine that there is an "imminent" danger that the properties will be diminished in value.

### D. Inadequacy of Legal Remedies

The court determines that this weighs against the appointment of a receiver. With regards to the legal remedy, Plaintiffs' cause of action arises out of a breach of contract. The traditional remedy for a breach of contract action is damages. Here, the court determines that damages serves as an adequate legal remedy. A damage award would make Plaintiffs whole under the terms of the loan agreement.

### E. Lack of a Less Drastic Equitable Remedy

This factor weighs in favor of appointing a receiver. In Defendants' Response to Plaintiffs' Application for Appointment of Receiver, Defendants present an alternative to the appointment of a receiver. In the alternative, Defendants request that the court approve an order requiring them to (a) tender into the registry of the court the net proceeds of monthly store rentals and installment note payments received from the leases and/or sale of the affected stores, minus the applicable monthly operating expenses and, thereafter, make such payments into the registry of the court; and (b) furnish a monthly report reflecting the operations generally and the relevant expenses pertaining thereto to the court and Plaintiffs. The court finds Defendant's argument regarding the alternative equitable remedy unpersuasive. With a growing docket and scarce judicial resources, the court is not equipped, in terms of time and staff, with the ability to monitor the financial activity of the twelve properties. Courts should take on this type of role sparingly, as such responsibilities and duties are best performed by persons with knowledge and experience in serving as receivers. Moreover, a receiver would ensure that monies and revenues are properly collected. Further, if Defendants are overseeing the collection of payments, such setup removes the court and receiver from the most critical aspect. For a receiver to be effective and to ensure that all monies are collected and

accounted for, a receiver must have an accurate account of what is collected for the properties at the outset. Accordingly, the court does not believe that this is a suitable alternative for it to undertake.

### F. Likelihood that Appointment Will Do More Harm than Good

The court finds that this factor weighs in favor of appointing a receiver. Plaintiffs contend that the appointment of a receiver will ensure that the properties encumbered by the Deeds of Trust will continue to be maintained, repaired, and insured during the pendency of this action. Defendants respond that appointing the receiver will cause irreparable injury. Specifically, Defendants contend that the appointment of a receiver will hinder their ability to maintain the operation of the stores. Defendants contend that neither Berkadia nor any person purporting to act on their behalf has the requisite licenses and permits authorizing the sale of alcoholic beverages, tobacco products, and lottery tickets in conjunction with operating the stores affected by this lawsuit. Defendants contend that the licenses and permits are required to carry on the business routinely conducted in their stores. Defendants further contend that irreparable injury will occur because the sale of alcoholic beverages, lottery tickets, and certain other products account for a substantial part of the business generated at their stores.

The court finds this argument unpersuasive. At the hearing, Defendants attempted to admit testimony from Defendant Alan Golman ("Mr. Golman"), concerning the transferability of the licenses and permits. Plaintiffs lodged a "best evidence" objection, contending that Mr. Golman could not testify to the contents of the licenses and permits. Specifically, Plaintiffs contended that the best evidence of the contents of the licenses and permits was the licenses and permits themselves. After questioning from the court, Defendants admitted that they did not bring the licenses and permits to the hearing, despite mentioning the licenses and permits in their response.
**Memorandum Opinion and Order- Page 9**

The court sustained Plaintiffs' "best evidence" objection and prohibited Defendants from discussing the contents of the licenses; however, Mr. Golman was permitted to discuss his personal knowledge of the licenses and permits. Mr. Golman testified that three of the twelve stores operated with either tobacco, alcohol, or lottery licenses and that one of the twelve stores operated with a 7-11 franchise license.

Although Defendants vigorously argued that the licenses and permits are nontransferable, Defendants did not bring any supporting evidence to the hearing. Defendants also did not request leave to submit the licenses and permits to the court for review. In considering Defendants' arguments, the court was left only with Defendants' broad and unsupported statements concerning the transferability of the licenses and permit. As the licensing and permit issue was an important part of Defendants' argument, Defendants *should* have either attached the licenses and permits to their response or brought them to the hearing to admit into the record. Defendants did neither. As such, the court cannot accept Defendants' arguments without evidence to support them. Moreover, at most, only four of the twelve properties will be negatively affected by the appointment of a receiver. The court cannot deny the appointment of a receiver based on this reason.

Further, although Defendants argue that the sale of alcoholic beverages, lottery tickets, and certain other products accounts for a substantial part of business generated at the stores, Defendants did not submit any financial information to substantiate their claims. Accordingly, the court determines that the appointment of a receiver will not do more harm than good.

### G. Combined Assessment of the Factors

With respect to the factors, four factors weigh in favor of the appointment of a receiver and two factors weigh against the appointment of a receiver. The court believes that this alone merits

the appointment of a receiver. Further, the court's decision to appoint a receiver is bolstered by the parties' agreement to appoint a receiver in the event of default. *See* Pls.' Compl., Ex. 4, ¶ 2.2(I); *Riverside Props. v. Teachers Ins. and Annuity Ass'n of Am.*, 590 S.W.2d 736, 738 (Tex. App. – Houston [14th Dist.] 1979) (finding that agreement in deed of trust requiring appointment of a receiver in event of default "is not binding on the court but is one of the equities to be considered"). Weighing this and all other factors, the court concludes that the appointment of a receiver is warranted in this matter.

## IV. Conclusion

For the reasons herein stated, the court **determines** that the appointment of a receiver is warranted in this action. Accordingly, the court **grants** Plaintiffs' Application for Appointment of Receiver. Further, the court **determines** that William J. Hoffman is qualified to serve as receiver for the properties encumbered by the Quik-Way Deed of Trust. Accordingly, William J. Hoffman is **appointed** as receiver of the properties in question. The court will set forth his duties and responsibilities by separate order.

Plaintiffs request attorney's fees pursuant to a provision contained in the Deed of Trust. Plaintiffs are therefore **instructed** to file a motion for reasonable attorney's fees and costs by **August 8, 2011.** In its motion, Plaintiffs must set forth the amount of attorney's fees requested, the bases for the request, and the bases for the reasonableness of the fees requested. If this information is not provided, the court will deny Plaintiffs' request for attorney's fees. The response and reply **shall** be filed in accordance with the Local Civil Rules of the Northern District of Texas.

**It is so ordered** this 25th day of July, 2011.

                                                      Sam A. Lindsay
                                                     United States District Judge